UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TOMAS MARCO KEEN, <br><br> Petitioner, <br><br> v. <br><br> MICHAEL OBENLAND, <br><br> Respondent. | CASE NO. 3:19-CV-5830-DWC <br><br> ORDER DENYING 28 U.S.C. § 2254 PETITION |

Petitioner Tomas Marco Keen, proceeding *pro se* and *in forma pauperis*, filed his federal habeas Petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court judgment and sentence. *See* Dkt. 1. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 10, 10-1.

The Court concludes the state court's adjudication of Ground 1, the sole ground raised in the Petition, was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the Petition is denied and a certificate of appealability is not issued.

## I. Background

A. Factual Background

On May 14, 2010, in the Superior Court of Washington for Cowlitz County ("trial court"), Petitioner pleaded guilty to assault in the first degree with a firearm enhancement, unlawful possession of a firearm in the first degree, and two counts of possession of a stolen vehicle. *See* Dkt. 12-1, pp. 13-22, 386-94.[1] Petitioner was sentenced to 240 months confinement on May 28, 2010. *See id*. at pp. 2-10. The Supreme Court of the State of Washington ("state supreme court") summarized the facts of Petitioner's case as follows:

> According to Mr. Keen's plea agreement, he assaulted Eric Koski with a firearm and knowingly and unlawfully possessed a firearm on February 17, 2010. That same day, Mr. Keen knowingly possessed a stolen Mitsubishi Eclipse belonging to Erica Ouellette and a Toyota Scion belonging to Gina and Troy Rominger. The factual details of those crimes are not further illuminated by Mr. Keen's postconviction documents. Police arrested Mr. Keen and Michael Sanders on the evening of February 17, 2010.
>
> According to the allegations in Mr. Sanders's motion to suppress, police stopped Mr. Keen driving a Dodge Durango away from a home that police were monitoring. Mr. Sanders was a passenger in the front seat. A silver Mazda was parked at the home that was registered to Mr. Sanders. Mr. Sanders refused to allow the officers consent to search the Mazda, and police refused to let Mr. Sanders leave in it, saying they had seized the Mazda. Officers later searched it and found a sawed-off shotgun and a .22 caliber rifle in the trunk.
>
> Separately from Mr. Keen's case, police charged Mr. Sanders with first degree burglary with a firearm enhancement, three counts of theft of a firearm, three counts of first degree unlawful possession of a firearm, first degree theft, and possession of an unlawful firearm. Mr. Sanders moved to suppress, arguing that the search of the Mazda was improper. Mr. Sanders later told Mr. Keen that the prosecutor admitted the search was improper and dropped the charges and enhancements stemming from the weapons found in the Mazda. Mr. Sanders pled guilty to the remaining charges before the court could rule on his motion to suppress.

---

[1] In the signed plea agreement, Petitioner stated, "The plea is an Alford Plea regarding the intent to inflict great bodily harm on [the victim], I was trying to scare him not hurt him, however, I admit that a jury, based on shots being fired, could find that I had such intent and convict me of these or more serious charges and as a result I wish to take a plea on that charge and take the benefit of the states offer." Dkt. 12-1, p. 21 (punctuation and spelling as in original).

Dkt. 12-1, pp. 25-26.

B. <u>Procedural Background</u>

Petitioner did not file a direct appeal. *See* Dkt. 11, p. 2; *see also* Dkt. 12.[2] On December 27, 2016, Petitioner filed a motion to withdraw his guilty plea. *See* Dkt. 12-1, p. 250. The motion was transferred to the Court of Appeals of the State of Washington ("state court of appeals") as a personal restraint petition ("PRP"). *See Id.* at pp. 309, 311, 313. The state court of appeals dismissed the PRP as untimely on September 26, 2017. *Id.* at pp. 315-17. Petitioner sought discretionary review from the state supreme court, which was denied by the commissioner of the state supreme court on June 27, 2018. *Id.* at pp. 24-29, 319-29. Petitioner moved to modify the commissioner's decision. *Id.* at pp. 365-80. The state supreme court denied the motion to modify and the state court of appeals issued the certificate of finality on September 12, 2018. *Id.* at pp. 382, 384.

On September 4, 2019, Petitioner filed his Petition alleging his rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963) when the prosecutor failed to disclose exculpatory evidence prior to Petitioner entering a plea agreement. Dkt. 6. On November 27, 2019, Respondent filed, and served on Petitioner, an Answer and Memorandum of Authorities. Dkt. 11. In the Answer, Respondent asserts Petitioner's claim is not based upon clearly established federal law and, even if it was, the state court's adjudication of the sole ground raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 11. On December 27, 2019, Petitioner filed his Traverse. Dkt. 14. Respondent filed a Reply to the Traverse on January 8, 2020. Dkt. 16.

---

[2] Petitioner filed several post-conviction motions that are unrelated to the claim raised in the Petition. Therefore, the Court will not discuss the unrelated state motions. *See* Dkt. 11, 12.

## II. Discussion

Respondent maintains Ground 1 -- the sole ground raised in the Petition – is not based upon clearly established federal law and, even if it is, the state courts' adjudication of Ground 1 was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 11.

A. Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

B. Brady Violation

Petitioner alleges his rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. 6. Petitioner asserts the prosecutor threatened to bring additional charges against Petitioner if he did not plead guilty to the charged offenses. *Id*. The prosecutor knew the evidence supporting the additional charges was unlawfully seized, yet did not disclose this to Petitioner. *Id*.

1. *Legal Standard*

A prosecutor has an affirmative duty to disclose evidence favorable to a defendant. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). In *Brady*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "There are three components of a *Brady* violation: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

To determine if the suppressed evidence is material, "the question is whether admission of the suppressed evidence would have created a reasonable probability of a different result, so the defendant must show only that the government's evidentiary suppression undermines confidence in the outcome of the trial." *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011), *as amended* (citation and internal quotation marks omitted). "To determine whether prejudice exists, we look to the materiality of the suppressed evidence." *Id.* The duty to disclose is limited to material evidence favorable to the defense which is deemed to be in the prosecutor's possession, custody, or control. *Kyles*, 514 U.S. at 437-38. However, "the prosecutor's duty to disclose under *Brady* is limited to evidence a reasonable prosecutor would perceive at the time as being material and favorable to the defense. *Woods v. Sinclair*, 764 F.3d 1109, 1127 (9th Cir. 2014).

2. *State Court Decision*

In determining the State did not violate *Brady*, the state supreme court stated:

> The components of a *Brady* claim are: the evidence at issue is favorable to the accused because it is exculpatory or impeaching, the evidence was suppressed by the State either willfully or inadvertently, and the accused was prejudiced (*i.e.*, the evidence was material). As to prejudice, the defendant must show specifically that there is a reasonable probability that, had the evidence been timely disclosed, the result of the proceeding would have been different.
>
> Here, the motion to suppress Mr. Sanders had filed is simply too attenuated from Mr. Keen's prosecution. Mr. Keen does not demonstrate that the motion to suppress constituted favorable evidence: it was merely an argument made in another case that the trial court did not rule upon. And Mr. Keen cannot demonstrate that the State withheld the motion to suppress given that it was publicly filed by Mr. Sanders and thus could have been readily identified and examined by counsel prior to Mr. Keen's plea. Finally, Mr. Keen fails to provide competent, admissible evidence establishing that he would not have pleaded guilty had the prosecutor not allegedly threatened to bring these additional charges. Indeed, Mr. Keen fails to explain how the unlawful weapons found in Mr. Sanders's Mazda could have been tied to him. The "newly discovered" motion to suppress was not necessary to understand just how attenuated the weapons in the Mazda were from the prosecution of Mr. Keen.
>
> Mr. Keen's *Brady* argument lacks any arguable basis in law or in fact.

Dkt. 12-1, pp. 28-29.

3. *Analysis*

Here, Petitioner asserts he was initially charged with attempted murder because he fired several rounds from a firearm into a citizen's vehicle. Dkt. 6, p. 3. The prosecutor offered Petitioner a "plea bargain for first-degree assault (and three other offenses) warning that if he did not plead out the State would bring additional charges for first-degree burglary and three firearm enhancements[.]" *Id*. The prosecutor told Petitioner that, because Mr. Sanders's car was on Petitioner's property, the State could bring the additional charges. *Id*. Petitioner asserts the prosecutor was using the firearms charges to leverage a guilty plea from Petitioner while conceding to Mr. Sanders the firearms were inadmissible because the seizure of the firearms was outside the scope of the search warrant. *Id*.

Prior to Petitioner entering his guilty plea, Mr. Sanders's attorney filed a motion to suppress the evidence seized from Mr. Sanders's car, located on Petitioner's property, because it exceeded the scope of the search warrant. *Id*. at p. 4. According to Petitioner, the prosecutor, "taking active steps to keep th[e] motion out of the courtroom, conceded to Sanders that the evidence from the car was inadmissible and agreed to dismiss the firearm charges[.]" *Id*. The trial court did not rule on the motion to suppress in Mr. Sanders's case because Mr. Sanders pled guilty. *Id*. Petitioner asserts the prosecutor did not disclose the fact that the evidence supporting additional, uncharged firearms offenses was inadmissible and used the inadmissible evidence to leverage a plea deal in Petitioner's case. *Id*.

Respondent argues Petitioner is not entitled to relief because there is no clearly established federal law on which this claim rests. *See* Dkt. 11, 16. Petitioner contends his rights were violated when the State failed to disclose exculpatory evidence prior to Petitioner entering a

guilty plea. A guilty plea is more than "an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial." *Brady*, 397 U.S. at 748. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The Constitution does not require a defendant to have complete knowledge of the relevant circumstances before pleading guilty. *United States v. Ruiz,* 536 U.S. 622, 630 (2002). Importantly, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id*. at 633. Some courts have found the Supreme Court, in *Ruiz*, made no distinction between impeachment evidence and exculpatory evidence, meaning the Constitution does not require disclosure of material exculpatory evidence prior entering a plea agreement with a defendant. *See U.S. v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009). However, neither the Supreme Court, nor the Ninth Circuit have explicitly stated *Ruiz* applies to both impeachment evidence and exculpatory *Brady* material. *See Gonzalez v. Gipson*, 2016 WL 3055830, at * 7-8 (N.D. Cal. May 31, 2016) ("The Ninth Circuit has not yet decided, in a case to which the AEDPA applied, whether *Ruiz* does or does not require disclosure of exculpatory *Brady* material."); *Rhoades v. Paskett*, 2005 WL 3576845, at *8 (D. Idaho Dec. 29, 2005), aff'd sub nom. *Rhoades v. Henry*, 598 F.3d 511 (9th Cir. 2010) ("The focus of Brady, however, was on a defendant's right to a fair trial, and the United States Supreme Court had not decided (and still has not decided) whether the duty to disclose exculpatory evidence extends to cases in which a defendant ultimately pleads guilty, or whether a guilty plea waives any challenge on that basis.").

The Supreme Court has found there is no constitutional right to impeachment evidence prior to entering a guilty plea. There is no clearly established law regarding whether there is a constitutional right to exculpatory evidence prior to entering a guilty plea. As the Supreme Court has not explicitly held that exculpatory *Brady* material must be disclosed before a defendant pleads guilty, the state supreme court's decision denying Petitioner's *Brady* claim cannot be said to be contrary to, or an unreasonable application of, clearly established federal law. *See Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law."); *Gonzalez*, 2016 WL 3055830 at * 8 (finding the state court's decision rejecting the petitioner's claim that his rights were violated when the prosecutor did not disclose exculpatory materials prior to his plea was not contrary to clearly established federal law because the Supreme Court had not decided the issue); *see also Spillers v. McDowell*, 2017 WL 5159614, at * 5 (C.D. Cal., Nov. 3, 2017).

Even assuming Petitioner's claim rests upon clearly established federal law, Petitioner has not shown he is entitled to federal habeas relief. Dkt. 11, 16. Petitioner provides only unsubstantiated allegations that exculpatory evidence existed and was not provided to Petitioner. Dkt. 6, 14. Petitioner alleges Mr. Sanders's attorney and the prosecutor theorized that seized evidence related to Petitioner's "not-yet-charged offenses" was inadmissible because it was outside the scope of a search warrant. *See* Dkt. 6, 14. However, Petitioner does not show how unsubstantiated theories regarding the admissibility of evidence in a separate case is exculpatory evidence requiring a pre-plea disclosure under *Brady*. Petitioner has not adequately shown how the allegedly inadmissible evidence in Mr. Sanders's case relates to charges or potential charges

brought against Petitioner or that the evidence would be inadmissible in Petitioner's case. Moreover, Petitioner fails to show the prosecutor suppressed any exculpatory evidence related to Petitioner's case.

In sum, Petitioner has failed to adequately show the prosecutor's alleged belief regarding the admissibility of evidence in a separate case and a motion to suppress in a separate case constituted a *Brady* violation in this case. Therefore, Petitioner fails to demonstrate the state court's conclusion that the State did not commit a *Brady* violation was contrary to, or an unreasonable application of, clearly established federal law. *See United States v. Marquez*, 49 Fed. App'x 741, 743 (9th Cir. 2002) ("the government is not required to disclose evidence favorable to the defendant prior to entering a plea agreement"); *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (rejecting *Brady* claim based on "mere suppositions" with "absolutely no evidence" that the allegedly withheld material, if it existed, "would have contained exculpatory evidence"). Accordingly, the sole ground raised in the Petition is denied.

### III. Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to

hold an evidentiary hearing because, as discussed in this Order, Petitioner's sole ground for relief may be resolved on the existing state court record.

### IV. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claim or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

### V. Conclusion

Petitioner fails to show the state courts' adjudication of the sole ground raised in the Petition was contrary to, or an unreasonable application of, clearly established federal law. Further, an evidentiary hearing is not necessary. Therefore, the Petition is denied and a certificate of appealability is not issued. The Court, however, finds Petitioner's *in forma pauperis* status may continue on appeal.

Dated this 20th day of February, 2020.

David W. Christel
United States Magistrate Judge